# Exhibit "A"

Proposed Second Amended Complaint for Injunctive Relief and Damages

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**LOUIS JORGL III**

      **Plaintiff,**

v.                                **CASE NO.: 8:19-CV-2206-T-23AEP**

**YOUNG MEN'S CHRISTIAN**
**ASSOCIATION OF THE SUNCOAST, INC.,**
**D/B/A CLEARWATER YMCA,**

      **Defendant.**

_____/

**SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff, LOUIS JORGL III, sues Defendant, YOUNG MEN'S CHRISTIAN ASSOCIATION OF THE SUNCOAST, INC., asserting the following allegations.

**I.  PARTIES, JURISDICTION, AND VENUE**

1.  This is an action for declaratory and injunctive relief, and for money damages which exceed $15,000 exclusive of attorneys' fees, interest, and costs.

2.  Plaintiff LOUIS JORGL III ("Jorgl") is and at all material times was a resident of Pinellas County, Florida.

3.  Defendant YOUNG MEN'S CHRISTIAN ASSOCIATION OF THE SUNCOAST, INC. ("YMCA"), is and at all material times was, a not-for-profit Florida corporation conducting business in Pinellas County, Florida.

4.  The incidents and conditions which are the subject of this litigation occurred or exist at a YMCA location at 1005 S Highland Ave., Clearwater, FL 33756 ("Clearwater YMCA"), from 2016 through the present.

1

Exhibit A

5.      This Court has jurisdiction over this action and the parties.

6.      Venue is proper in this Court.

7.      All conditions precedent to filing this action have occurred or have been satisfied or waived.

## II.    <u>GENERAL ALLEGATIONS</u>

### A.      <u>The Americans With Disabilities Act</u>

8.      The Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, was enacted in 1990 to eliminate "unfair and unnecessary discrimination and prejudice which denies people with disabilities opportunities to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous. 42 U.S.C. § 12101 (A)(8).

9.      42 U.S.C. § 12182(a) provides as follows:

*No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.*

10.      42 U.S.C. § 12102(1) defines "disability" in pertinent part as follows:

*The term "disability" means, with respect to an individual—*

(A)      *a physical or mental impairment that substantially limits one or more major life activities of such individual;*

11.      For purposes of the definition of "disability," 42 U.S.C. § 12102(2) defines "major life activities" thus:

(A)      *In general*

*For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.*

(B)   *Major bodily functions*

*For purposes of paragraph (1), a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.*

12.     42 U.S.C. § 12181(7), regarding "public accommodations," provides in

pertinent part:

*The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce—
. . .*

(C)     *a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;*
(D)     *an auditorium, convention center, lecture hall, or other place of public gathering; . . .*
(I)     *a park, zoo, amusement park, or other place of recreation; . . .*
(L)     *a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.*

13.     Title III of the ADA includes a "General Prohibition" against discrimination. 42

U.S.C. § 12182(b)(1)(A) provides in pertinent part:

(i)     *Denial of participation*

*It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.*

(ii)    *Participation in unequal benefit*

*It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals.*

(iii)    *Separate benefit*

*It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others.*

(iv)    *Individual or class of individuals*

*For purposes of clauses (i) through (iii) of this subparagraph, the term "individual or class of individuals" refers to the clients or customers of the covered public accommodation that enters into the contractual, licensing or other arrangement.*

14.    Title III of the ADA further includes "Specific Prohibitions" against discrimination.    42 U.S.C. § 12182(b)(2)(A) provides in pertinent part:

*. . . discrimination includes—*

*. . .*

*(ii)    a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;*

*(iii)    a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services . . .*

15.    42 U.S.C. § 12183(a) addresses a public accommodation's obligation to correct its facilities to comply with Title III, and provides in pertinent part as follows:

*. . . discrimination for purposes of section 12182(a) of this title includes—*

*(1)       a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable . . .; and*

*(2)       with respect to a facility or part thereof that is altered by, on behalf of, or for the use of an establishment in a manner that affects or could affect the usability of the facility or part thereof, a failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs. Where the entity is undertaking an alteration that affects or could affect usability of or access to an area of the facility containing a primary function, the entity shall also make the alterations in such a manner that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities.*

16.     The Americans with Disabilities Act is implemented and enforced through regulations enacted by the Department of Justice. 42 U.S.C. § 12134.     For Title III of the ADA which relates to public accommodations, such regulations are codified at 28 C.F.R. §§ 36.101 *et seq.*

17.     The Department of Justice publishes its ADA Architectural Guidelines ("ADAAG") at 28 C.F.R. Part 36, App. A. By virtue of the Department of Justice's ADA Standards for Accessible Design, 28 C.F.R. Pt. 36, App. D and decisional authorities, pertinent portions of ADAAG carry the force and effect of law.

18.     Since the ADA was enacted, Defendant obtained, and performed the work associated with, no less than two (2) building permits for work which required retrofitting and compliance with the ADA at the Clearwater YMCA property.     Plaintiff is informed and believes that the work included:

| Year of Permit | Nature of Work |
|---|---|
| 2016 | Interior renovations including walls and allegedly accessible routes. |
| 2005 | Interior remodel, including allegedly making the front entrance and rear exits ADA compliant, adding an ADA compliant lift, and ensuring 32" wide access. |

### B.      Clearwater YMCA as a Public Accommodation

19.      YMCA operates Clearwater YMCA as a gymnasium and fitness center, and as a swimming pool facility, a recreation center, and a community center. YMCA offers many services and programs at Clearwater YMCA, including aerobics, yoga, personal training clinics, youth basketball and soccer leagues, swimming lessons and programs, massage programs, senior fitness programs, youth summer camps, disabled youth camps, daycare, a chapel, lifeguard training, CPR classes, computer skills classes for adults, organized races, and more.

20.      YMCA makes its Clearwater YMCA facilities, programs, and services available to persons who become members and pay dues to YMCA.

21.      Clearwater YMCA is a "public accommodation" as defined by Section 12181(7) of the ADA.

### C.      The Florida Civil Rights Act

22.      Florida enacted the Florida Civil Rights Act of 1992 ("FCRA"), Florida Statutes Sections 760.01 *et seq.* and 509.092, to secure freedom from discrimination, including discrimination because of handicap, and thereby protect their interest in personal dignity and promote the interests, rights, and privileges of individuals within the state.

23.     As a matter of law, a disability discrimination claim under the FCRA must be construed in conformity with and analyzed under the ADA.

24.     Fla. Stat. § 760.08 provides as follows:

*All persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation without discrimination or segregation on the ground of race, color, national origin, sex, pregnancy, handicap, familial status, or religion.*

25.     Jorgl's vision impairment substantially limits one or more of his major life activities including, but not limited to, seeing, walking, and working; thus, Jorgl has a disability as defined under Section 12102(1) and under the FCRA.

26.     Jorgl is an individual who is entitled to the protections of the FCRA.

27.     Fla. Stat. § 760.02(11) provides as follows:

*"Public accommodations" means places of public accommodation, lodgings, facilities principally engaged in selling food for consumption on the premises, gasoline stations, places of exhibition or entertainment, and other covered establishments. Each of the following establishments which serves the public is a place of public accommodation within the meaning of this section:*
    . . .
*(c)     Any motion picture theater, theater, concert hall, sports arena, stadium, or other place of exhibition or entertainment.*

*(d)     Any establishment which is physically located within the premises of any establishment otherwise covered by this subsection, or within the premises of which is physically located any such covered establishment, and which holds itself out as serving patrons of such covered establishment.*

28.     The Clearwater YMCA is a public accommodation under the FCRA, because:

- Section 760.02(11) is a non-exclusive list of public accommodations, and Clearwater YMCA is an "other covered establishment;" and

- Clearwater YMCA is and holds itself out as a place of exhibition or entertainment; and

- Clearwater YMCA operates a sports arena on its premises, and the Clearwater YMCA fitness center and swimming pool are located on the same premises; and

- As a matter of law, in the event of uncertainty or ambiguity, "public accommodation" under FCRA is construed in accordance with "public accommodation" under ADA.

**D.   Plaintiff Lou Jorgl as a Person with a Disability and a Handicap**

29.     Jorgl was born with a progressive condition which affected his vision.    The progressive nature of the condition has left him legally blind.    Jorgl's visual acuity is less than one percent (1%) of that of a non-disabled person with average vision; at times, even less.    In addition, to the extent Jorgl can see at all, it is only in the straight-ahead direction, Jorgl has no peripheral vision.

30.     Jorgl necessarily relies upon a white cane and, to a much greater extent than other fully-sighted non-disabled persons, his other senses for mobility and other activities.

31.     Jorgl's vision impairment substantially limits one or more of his major life activities including, but not limited to, seeing and working; thus, Jorgl is a person with a disability under Section 12102(1).

32.     Jorgl, being a person with a disability, is entitled to protection from discrimination on the basis of his disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Clearwater YMCA, a place of public accommodation.

33.     Jorgl is a person with a "handicap" as that term is used in Chapter 760, Florida Statutes.

### E.      Lou Jorgl as a Plaintiff with Standing

34.      For at least ten (10) years, Jorgl has been a member of YMCA and has patronized the Clearwater YMCA, regularly attempting to take advantage of Clearwater YMCA's fitness center and swimming pool facilities and services.

35.      Jorgl has regularly encountered discrimination in the form of architectural barriers to the Clearwater YMCA facilities, and in the form of discriminatory practices, policies and procedures in the Clearwater YMCA's provision of services and programs.

36.      Jorgl has regularly brought Clearwater YMCA's discriminatory architectural barriers and Clearwater YMCA's discriminatory practices, policies, and procedures to YMCA's attention, and has requested modification of each so that Clearwater YMCA will reasonably accommodate him, and to achieve compliance with the ADA. YMCA has consistently ignored Jorgl's protestations and requests for modifications.

37.      Even though Clearwater YMCA has continued to discriminate against Jorgl, he has continuously renewed his membership, and has continued to patronize Clearwater YMCA, because:

- Recreation and physical fitness are important to Jorgl; and

- Jorgl is unable to operate a motor vehicle or bicycle in public, and transportation for hire is expensive; consequently, Jorgl's principal means of transportation is walking; located only 1.1 miles from Jorgl's residence, Clearwater YMCA is the only geographically available fitness center for him; all others are several times this distance from Jorgl's home.

38.     For the same reasons, Jorgl intends to maintain his membership and to continue to patronize Clearwater YMCA, even though he believes that in the absence of a judgment in the instant case YMCA will take no steps to eliminate its architectural barriers to accessibility, or to modify its discriminatory practices, policies, and procedures.

39.     To attempt to be treated fairly, equally, and lawfully by YMCA at its Clearwater YMCA place of exhibition or entertainment, public gathering, recreation and exercise, and to remedy any past discrimination, and to pursue any other relief which may be available to Plaintiff, Jorgl has retained the services of undersigned counsel. Plaintiff has agreed to pay counsel a reasonable attorneys' fee and has agreed to reimburse counsel's reasonable costs incurred.

## COUNT I
### Violation of the Americans with Disabilities Act

40.     Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 39 above.

41.     In his visits to Clearwater YMCA, Jorgl has been and will continue to be presented with numerous barriers to mobility in violation of the Americans with Disabilities Act.   Examples include:

a.   Exercise Equipment, Fitness Center

1.     Arranging exercise equipment without regard to accessible route requirements, making it impracticable for Jorgl to safely maneuver around the area, and failing to make certain that at least one of each type of exercise equipment or machine has a clear floor space of at least 30 by 48 inches, or 36 by 48 inches where the piece equipment is enclosed on three sides; such

inaccessible arrangements have manifested at the facility in actual risks to and discrimination against Jorgl, in that he has on many occasions been unable to access particular types of equipment; this lack of clear space and accessibility has routinely existed in connection with the elliptical and Stairmaster machines;

2.      Arranging equipment and equipment components to protrude into walkways, halls, corridors, passageways and aisles that are required to be accessible or that are required to be maintained as clear space around other equipment, thereby forcing Jorgl to endanger himself and other patrons when trying to access the equipment; such risk has manifested in discrimination against Jorgl at the facility, as he has collided with equipment that was placed in the fitness center pathways, and he has been struck by other patrons who were using equipment in locations that protruded into the fitness-center pathways;

3.      Permitting trainers and staff members to instruct and/or allow Clearwater YMCA members and guests to use the fitness center pathways as an area to exercise, stretch, train, do aerobics, creating unpredictable obstructions that create a risk of falling on or over patrons; each such risk has manifested in discrimination against Jorgl at the facility, as he has fallen on or over patrons, and has accidentally struck them with his cane;

4.      Permitting trainers and staff members to instruct and/or allow Clearwater YMCA members and guests to use the fitness center pathways as an area to temporarily store their bags, gear and equipment, creating

11

unpredictable obstructions that create a risk of falling on or over patrons, or a risk of tangling Jorgl's white cane into gym bag straps and gear; each such risk has manifested in discrimination against Jorgl at the facility, as he has fallen on or over patrons' equipment and gear, and has tangled his cane in their bag straps, once even breaking his cane, leaving him with no way to walk home;

5.      Permitting trainers and staff members to refuse to provide Jorgl with assistance so that he can having full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations such as use of treadmills and other equipment, such as equipment bearing touch-screen controls, despite asking for trainers and staff members for assistance;

6.      Allowing trainers and staff to deprive Jorgl of access to the water fountains by instructing members to use the area in front of the water fountains as a workout area;

7.      Failing to provide Jorgl with notice of damaged equipment, leading Jorgl to unknowingly use the damaged equipment and become injured.

b. Common Areas

1.      Placing obstructions in common area hallways and walkways that are required to be accessible; such risk has manifested in discrimination against Jorgl at the facility, as he has frequently collided with obstructions in the hallways and walkways;

2.      Permitting trainers and staff members to block walks, halls, corridors, passageways, and aisles with seated children and their personal belongings, thereby causing Jorgl to accidentally strike children with his cane, and to trip

or fall over them; such risk has manifested in discrimination against Jorgl at the facility, as he has collided with children who were instructed to sit in the hallways, has tripped over them, and has accidentally struck them with his cane;

3.     Permitting trainers, staff members, and guests to obstruct the facility's ADA complaint station with marketing materials and other items, thereby depriving Jorgl of access to such areas;

4.     Installing water fountains at ADA non-compliant heights making them difficult for Jorgl to use;

5.     Installing doors to offices, fitness rooms and activity rooms which open into hallways that are required to be accessible, and which do not have windows to allow fully-sighted, non-disabled patrons or staff to look for persons like Jorgl prior to opening the door into their path of travel; this condition has manifested in discrimination against Jorgl because he has, on multiple occasions been struck by doors which open into his path of travel;

6.     Conducting maintenance and construction efforts in common areas without providing notice or warning devices, causing Jorgl to walk into areas with dangerous activities and equipment; such risk has manifested in Jorgl unknowingly walking into a ladder and amidst coaxial cable inside the facility, and unknowingly walking under a crane boom outside the facility.

c.   Locker Rooms

1.     Failing to advise disabled persons that ostensibly accessible lockers exist in the facility; such failure manifested in discrimination against Jorgl in

that he was unaware of the existence of the ostensibly accessible lockers for the first seven years of his YMCA membership;

2.      Failing to make certain that the locker room which Clearwater YMCA makes available to Jorgl has at least one fully accessible locker, a fully accessible route to such locker, an accessible route to all elements of the locker room that are otherwise required to be accessible, and an accessible bench that is not readily removable; such failures have manifested at the facility for Jorgl, in that he has occasionally been unable to access a locker;

3.      Permitting trainers, staff members, and guests to block the lockers with benches or other seating; such failures have manifested at the facility for Jorgl, in that he has occasionally been unable to access a locker due to its obstruction by readily removable benches;

4.      Periodically using the locker room for other programs and functions, such as lifeguard meetings and training sessions, thereby depriving Jorgl of the opportunity to use any accessible locker; this alternate usage has manifested as discrimination against Jorgl, in that he has occasionally been unable to use the locker room;

5.      Allowing trainers, staff, and guests to leave locker doors open and protruding into areas required to be accessible, thereby creating an inability to access the lockers and creating a risk that protruding sharp metal edges could cause injury to Jorgl; such risk has manifested in discrimination against Jorgl at the facility, as he has collided with the open doors.

    d.  <u>Swimming Pool</u>

      1.     Failing to make certain Jorgl has an opportunity to reasonably use a swimming lane at reasonable times;

      2.     Expressly prohibiting Jorgl from using a swimming lane for most of each week, even though the lanes are available to non-disabled users at their convenience;

      3.     Allowing YMCA lifeguards to permit non-disabled members to access a swimming lane during Jorgl's use of the same lane, thereby creating risk of injury to Jorgl and denying him full and equal enjoyment of the swimming pool; such risk has manifested in discrimination against Jorgl, as he collided with other swimmers many times, resulting in injury on several occasions when both patrons were swimming at their full speed;

    e.  <u>Other Services and Programs</u>

      1.     Allowing YMCA staff members to verbally abuse Jorgl and subjecting him to verbal public discrimination for his disability and on account of his inability to use the facility to its fullest extent without injury.

42.    As a direct and proximate result of the YMCA's discriminatory acts, Jorgl has suffered:

    a.  Personal injury from bumping into objects protruding in or blocking accessible areas, walks, halls, corridors, passageways, and aisles;

    b.  Personal injury from using damaged equipment that the YMCA failed to give notice of the equipment's condition;

    c.  Personal injury from Jorgl's cane becoming entangled in bags and other items

15

blocking passageways;

d. Property damage when Jorgl's cane was broken when entangled with items blocking passageways;

e. Personal injury from bumping into lockers with open doors;

f. Personal injury while swimming when nondisabled guests were allowed to swim into the disabled lap lane;

g. Fear, apprehension, and mental anguish when using the facilities, due to concerns for his safety and the safety of others;

h. Embarrassment and mental anguish arising from verbal abuse based on his disability;

i. Frustration at being unable to access basic facilities such as the water fountains and locker rooms; and

j. Hostility from other guests whom Jorgl had to ask to move after YMCA trainers and staff instructed them to occupy areas that deprived Jorgl of access to the facilities.

43. Jorgl visited the YMCA within the twelve (12) months preceding the filing of this action and frequently encountered the barriers alleged above. He has been denied full and equal access to this public accommodation as a result of these barriers.

44. Jorgl intends to visit the YMCA in the future and knows that on each occasion he will face the same accessibility violations and discrimination he has faced in the past.

45. If the accessibility violations were cured, Jorgl would visit the YMCA even more frequently.

46.     YMCA must be enjoined from further violation of Title III of the ADA. Specifically, the Court should enter an order requiring that the YMCA immediately commence renovation of its practices, procedures, policies and facilities to achieve compliance with ADA, and to train its staff members regarding common disability accommodation requirements and customs, and to otherwise cease discriminating against Jorgl on account of his disability and mobility limitations.

47.     The YMCA's history of performing renovations and repairs to its facilities without implementing accommodations and/or removing barriers demonstrates that, in the absence of an injunction, the Clearwater YMCA's conduct will continue unabated.

48.     The Court should further order a third-party or mutually agreed monitoring program for such renovations, at YMCA's expense, to assure compliance with the ADA and the Court's Order, or should retain jurisdiction to assure such compliance.

49.     As a result of Defendant's discrimination against Jorgl in violation of Title III of the Americans with Disabilities Act, Jorgl has suffered, and continues to suffer:

a. Undue and unnecessary physical effort and struggle as Jorgl seeks to enjoy the benefits of the Clearwater YMCA establishment;

b. Embarrassment, humiliation, and emotional trauma associated with the struggle to be treated fairly, equally, and lawfully at the YMCA; and

c. Anxiety and apprehension about his future visits to the YMCA as he knows it will discriminate against him if tries to use their facilities.

WHEREFORE, Plaintiff Louis Jorgl III prays that this Court enter judgment in his favor and against Defendant Young Men's Christian Association of the Suncoast, Inc., awarding in

Plaintiff's favor injunctive relief as outlined above, attorneys' fees pursuant to 42 U.S.C. § 12205, costs, interest, and such other relief as may be just and equitable.

## COUNT II
## Violation of the Florida Civil Rights Act

50.     Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 39, 41, and 42 above.

51.     YMCA's present conditions, configurations, barriers, practices, procedures and policies constitute discrimination against Jorgl as a result of his handicap.

52.     YMCA's discriminatory conditions, configurations, barriers, practices, procedures and policies constitute violations of the Florida Civil Rights Act.

53.     As a result of YMCA's discrimination against Jorgl in violation of the FCRA, Jorgl has suffered, and continues to suffer:

- Undue and unnecessary physical effort and struggle as Jorgl seeks to enjoy the benefits of the Clearwater YMCA facilities, services, and programs;

- Personal injury and property damage arising from collisions with other patrons in the fitness center, swimming pool, and common areas;

- Embarrassment, humiliation, and emotional trauma associated with the struggle to be treated fairly, equally, and lawfully at the Clearwater YMCA; and

- Anxiety and apprehension about future visits to the Clearwater YMCA, as he knows YMCA will again discriminate against him during such visits.

54.     To remedy past instances of discrimination against Jorgl, judgment for such damages should be entered in Jorgl's favor.

55.     While a judgment for damages is appropriate to remedy past instances of discrimination, Jorgl has no adequate remedy at law for protection against future instances of discrimination.

56.     YMCA's history of performing renovations and repairs to its facilities without implementing accommodations and/or removing barriers demonstrates that in the absence of an injunction, the YMCA's conduct will continue unabated.

57.     To protect Jorgl from future instances of discrimination, YMCA must be enjoined from further violation of the FCRA. Specifically, the Court should enter an Order requiring that YMCA immediately commence renovation of its practices, procedures, policies and facilities to:

- Remove architectural barriers and obstructions to accessibility;

- Prevent placement of such obstructions in the future;

- Achieve and maintain compliance with ADAAG;

- Train staff members regarding common disability accommodation requirements and customs; and

- Otherwise cease discriminating against Jorgl on account of his disability and mobility limitations.

58.     The Court should further order the appointment of a third party or protocol to monitor YMCA's implementation of the required renovations to the facility and modifications to its practices and procedures, to assure compliance with ADA, FCRA and the Court's Order.

WHEREFORE, Plaintiff, Louis Jorgl III prays that this Court enter judgment in his favor and against Defendant Young Men's Christian Association of the Suncoast, Inc., for injunctive relief as outlined above, along with compensatory damages, attorneys' fees pursuant to § 760.11(5), Florida Statutes, costs, interest, and such other relief as may be just and equitable.

## COUNT III
### Negligent Training, Supervision, and Retention

59.     Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 39 and 42 above.

60.     YMCA owes a duty to use reasonable care to inspect to ensure that its premises is in a reasonably safe condition for its guests including Jorgl.

61.     YMCA owes a duty to use reasonable care in maintaining its premises in a reasonably safe condition for its guests including Jorgl.

62.     YMCA owes a duty to use reasonable care to warn its guests, including Jorgl, of concealed perils which are or should be known to it.

63.     YMCA gives its employees, trainers and staff authority to assist its members in accessing and using the Clearwater YMCA facilities, services, and programs.

64.     YMCA permitted its employees, trainers and staff to assist its members in accessing and using the Clearwater YMCA facilities, services, and programs.

65.     YMCA employees, trainers and staff assisted its members in accessing and using the Clearwater YMCA facilities, services, and programs.

66.     Jorgl has a right to assume that the portions of the Clearwater YMCA facilities to which he has access are safe for his use.

67.     In accordance with YMCA's expectations and instructions to its members, Jorgl has met and relied upon YMCA trainers and staff regarding his access to and use of the Clearwater YMCA facilities, services, and programs.

68.     At all material times, Jorgl and the YMCA trainers and staff were properly located on the premises of the Clearwater YMCA facility.

69.     YMCA does not meaningfully train its Clearwater YMCA employees in inspecting the Clearwater YMCA premises to ensure it is in a reasonably safe condition for its guests, including Jorgl.

70.     YMCA does not meaningfully train its Clearwater YMCA employees in maintaining the Clearwater YMCA facility in a reasonably safe condition for its guests, including Jorgl.

71.      YMCA does not meaningfully train its Clearwater YMCA employees in warning its guests, including Jorgl, of concealed perils of which it knows or should know.

72.     As a direct and proximate result of the YMCA's lack of training Clearwater YMCA employees regarding the inspection of, maintenance of its premises to ensure its reasonably safe condition and regarding warning of concealed perils, Clearwater YMCA employees, trainers and staff have breached their duty to use reasonable care in assisting its members, including Jorgl, in using the Clearwater YMCA facilities, services, and programs. Examples include:

a.  Exercise Equipment, Fitness Center

1.     Arranging equipment and equipment components to protrude into walkways, halls, corridors, passageways and aisles that are required to be accessible or that are required to be maintained as clear space around other

21

equipment, thereby forcing Jorgl to endanger himself and other patrons when trying to access the equipment; such risk has caused Jorgl's collision with equipment that was placed in the fitness center pathways, and he has been struck by other patrons who were using equipment in locations that protruded into the fitness-center pathways;

2.       Instructing and/or allowing Clearwater YMCA members and guests to use the fitness center pathways as an area to exercise, stretch, train, do aerobics, creating unpredictable obstructions that create a risk of falling on or over patrons; each such risk has caused Jorgl to fall over patrons.     Jorgl has accidentally struck some of them with his cane;

3.       Instructing and/or allowing Clearwater YMCA members and guests to use the fitness center pathways as an area to temporarily store their bags, gear and equipment, creating unpredictable obstructions that create a risk of falling on or over patrons, or a risk of tangling Jorgl's white cane into gym bag straps and gear.    Each such risk has caused Jorgl to fall on or over patrons' equipment and gear, tangling his cane in their bag straps, once even breaking his cane, leaving him with no way to walk home;

4.       Failing to provide Jorgl with notice of damaged equipment, leading Jorgl to unknowingly use the damaged equipment and become injured.

b.     <u>Common Areas</u>

1.       Placing obstructions in common area hallways and walkways that are required to be accessible.     Such risk has caused Jorgl to collide with obstructions in the hallways and walkways;

2.      Blocking walks, halls, corridors, passageways, and aisles with seated children and their personal belongings, thereby causing Jorgl to accidentally strike children with his cane, and to trip or fall over them;

3.      Installing doors to offices, fitness rooms and activity rooms which open into hallways that are required to be accessible, and which do not have windows to allow fully-sighted, non-disabled patrons or staff to look for persons like Jorgl prior to opening the door into their path of travel.    This condition has caused Jorgl, on multiple occasions, to be struck by doors which open into his path of travel;

4.      Conducting maintenance and construction efforts in common areas without providing notice or warning devices, causing Jorgl to walk into areas with dangerous activities and equipment.    Such risk has caused Jorgl to unknowingly walk into hazards, including a ladder, and amidst coaxial cable inside the facility, and unknowingly walk under a crane boom outside the facility.

c.     Locker Rooms and Swimming Pool

1.      Leaving locker doors open and protruding into areas required to be accessible, thereby creating an inability to access the lockers and creating a risk that protruding sharp metal edges could cause injury to Jorgl.    Such risk has caused Jorgl to collide with the open locker doors.

2.      Permiting non-disabled members to access a swimming lane causing Jorgl to collide with other swimmers many times, resulting in injury on several occasions when both patrons were swimming at their full speed; and

23

d.    Other Services and Programs

1.    Allowing YMCA staff members to verbally abuse Jorgl and subjecting him to verbal public discrimination for his disability and on account of his inability to use the facility to its fullest extent without injury.

73.    As a direct result of Clearwater YMCA's failure to train its employees to use reasonable care in the proper inspection of its premises to ensure that it is in a reasonably safe condition for its guests, including Jorgl, Clearwater YMCA employees, trainers and staff have willfully, maliciously and without cause or provocation failed to correct unsafe conditions and moved equipment to create unsafe conditions causing it to touch Jorgl in a harmful and offensive manner.

74.    As a direct result of Clearwater YMCA's failure to train its employees to use reasonable care in maintaining its premises in a reasonably safe condition for its guests including Jorgl, Clearwater YMCA employees, trainers and staff have willfully, maliciously and without cause or provocation failed to correct unsafe conditions or created unsafe conditions for guests, including Jorgl, and once created an unsafe condition by degrading him and inciting another YMCA member's verbal and physical discrimination against him, causing one or more injuries as described herein.

75.    By reason of the YMCA employees', trainers' and staffs' malicious and willful conduct, Jorgl became greatly frightened and terrified for his safety as well as having to undergo undue physical effort and struggle, embarrassment, humiliation, anxiety, apprehension and fear of continued discriminatory acts.

76.    YMCA owed Jorgl a duty as a member of YMCA and a patron of Clearwater YMCA's facility, services, and programs, to refrain from negligently training, supervising, and

24

retaining employees in a fashion that caused or permitted them to fail to inspect for unsafe conditions, created unsafe conditions and failed to warn of unsafe conditions at its premises.

77.    YMCA breached its duty of care to Jorgl by negligently supervising and retaining employees YMCA knew failed to inspect for unsafe conditions, created unsafe conditions and failed to warn of unsafe conditions at its premises.

78.    YMCA became aware or should have become aware of its employees' failure to inspect for unsafe conditions, creation of unsafe conditions, and failure to warn of unsafe conditions at its premises during the course and scope of their employment, of a nature and to an extent that indicated the employees' unfitness to work at a place of public accommodation.

79.    Jorgl repeatedly advised YMCA management of its employees' failure to inspect for unsafe conditions, creation of unsafe conditions, and failure to warn of unsafe conditions at its premises which were regular practices of YMCA's employees.

80.    YMCA failed to take action on its employees' failure to inspect for unsafe conditions, creation of unsafe conditions, and failure to warn of unsafe conditions at its premises, such as investigating complaints or retraining, reassigning or discharging employees who discriminated against Jorgl.

81.    YMCA knowingly tolerated its employees' violation of YMCA's own posted rules, such as the posted rule against bringing personal belongings into, or creating obstructions within, the fitness center.

82.    As a direct and proximate result of Defendant's discrimination against Jorgl in negligently training, supervising, and retaining its employees with knowledge of their failure to inspect for unsafe conditions, creation of unsafe conditions, and failure to warn of unsafe

conditions at its premises, Jorgl has suffered and continues to suffer damages as described herein.

83.     To remedy past instances of failure to inspect for unsafe conditions, creation of unsafe conditions, and failure to warn of unsafe conditions at its premises which have injured Jorgl, judgment for such damages should be entered in Jorgl's favor.

84.     While a judgment for damages is appropriate to remedy past instances of discrimination, Jorgl has no adequate remedy at law for protection against future instances of discrimination.

85.     To protect Jorgl from future unsafe conditions, the Court should order YMCA to adopt policies, practices, and procedures that include: training employees regarding inspecting unsafe conditions, avoiding the creation of unsafe conditions, and warning of unsafe conditions; supervise employees in their implementation of such training; and disciplind employees who discriminate against YMCA's disabled patrons.

WHEREFORE, Plaintiff Louis Jorgl III asks this Court to enter judgment in his favor and against Defendant Young Men's Christian Association of the Suncoast, Inc., for injunctive relief as outlined above, and for money damages resulting from Defendant's tortious conduct, along with costs, interest, and such other relief as may be just and equitable.

### DEMAND FOR JURY TRIAL

Plaintiff Louis Jorgl III demands trial by jury of all claims and issues that are so triable.

**DOGALI LAW GROUP, P.A**.

*/s/ Andy Dogali*
Andy Dogali, Esq.
Florida Bar No. 0615862
Barbara U. Uberoi, Esq.

26

Florida Bar No. 0145408
401 East Jackson St., Suite 1825
Tampa, FL 33602
(813) 289-0700
adogali@dogalilaw.com, buberoi@dogalilaw.com
Secondary Email: lfair@dogalilaw.com,
reception@dogalilaw.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing has been furnished by

CM/ECF this 6th day of March 2020 to all parties who have requested notice via electronic

filing.

**DOGALI LAW GROUP, P.A.**

*/s/ Andy Dogali*
Andy Dogali, Esq.